# STATE OF MICHIGAN

# COURT OF APPEALS

---

MID MICHIGAN MEDICAL BILLING
SERVICE, INC.,

Plaintiff-Appellee,

v

LINDSEY A. WILLIAMS,

Defendant-Appellant.

UNPUBLISHED
February 18, 2016

No. 323890
Genesee Circuit Court
LC No. 13-101000-CK

---

Before: CAVANAGH, P.J., and RIORDAN and GADOLA, JJ.

PER CURIAM.

Defendant, Lindsey A. Williams, appeals as of right the trial court's entry of a judgment and permanent injunction enjoining her (1) "from engaging in any conduct . . . which is competitive with a service provided by Plaintiff Mid Michigan Medical Billing Services, Inc., . . . within 50 miles of [p]laintiff's principal place of business . . . for a period of one year" after the entry of an interim injunctive order on September 10, 2013; and (2) "from obtaining employment, either directly or indirectly, from any current or previously contracted client[] of [plaintiff]," without any geographical or durational limitations.

We remand for modification of the trial court's judgment in accordance with this opinion, but affirm in all other respects.

## I. FACTUAL BACKGROUND

Plaintiff provides medical billing services in Flint, Michigan. Defendant was employed as an office manager for plaintiff between 2002 and 2013, except for a short period in 2010 and 2011. One of her responsibilities was overseeing client relations. In May 2013, plaintiff voluntarily left her employment with plaintiff and began her own medical billing business out of her home. One of her clients was a former client of plaintiff.

This dispute arises out of an employee handbook and an employment agreement that plaintiff required all of its employees to sign and acknowledge. The handbook contained the following language, which is at issue in this appeal:

> **Avoidance of Conflict of Interest** – employees are prohibited to obtain employment from any contracted clients (physicians) or previously contracted

-1-

clients (physicians) of Mid Michigan Medical Billing Service Inc. either during or after voluntary or involuntary termination from Mid Michigan Medical Billing Services Inc.

The employment agreement provided, in relevant part:

7. **NON-SOLICITATION**

During the term of this Agreement and for a period of 12 months after the termination of this Agreement, the Employee acknowledges and agrees not to:

a. Induce others to quit the Employer's business.

b. Interfere with or disrupt the Employer's relationship with its employees.

c. Solicit, entice, or hire away any employee of the Employer.

d. Contact any of Employer's clients/customer[s].

\* \* \*

9. **NON-COMPETITION**

A. During the term of this Agreement and for a period of 12 months after a termination of this Agreement, the Employee will not be directly or indirectly involved with or engaged in, or contribute his/her knowledge to, any work which is competitive with a service provided by the Employer.

B. This Non-Competition clause is limited to the following geographical boundaries: 50 miles from Employer's location in Flint, Michigan.

C. The obligation of no competition and restrictions on Employee's work shall survive termination of this Agreement and will continue for a period of 12 months from the date of such termination.

On August 14, 2013, plaintiff filed a complaint and motion for a preliminary injunction, alleging, *inter alia*, a breach of contract claim based on the noncompetition provisions in the employee handbook and the employment agreement. In particular, plaintiff alleged that defendant violated the terms of the noncompetition provisions by performing medical billing out of her home, by contacting and soliciting the business of plaintiff's clients, by performing "medical billing for one of [p]laintiff's current clients," by employing one or two former employees of plaintiff, and by inducing others to terminate their employment with plaintiff.

In her answer, defendant admitted that she was providing medical billing services for one of plaintiff's former clients, but she denied contacting or soliciting any of plaintiff's clients or using any proprietary or confidential information owned by plaintiff. She explained that she was contacted by the former client in July 2013 and denied that she acted to solicit his business away from plaintiff.

On September 4, 2013, the trial court issued a temporary restraining order that enjoined defendant and her business from soliciting any of plaintiff's clients pending an evidentiary hearing on September 6, 2013.

At the hearing, defendant admitted that she signed a copy of the employee handbook and that she had agreed to be bound by it, but she denied signing an employment or noncompetition agreement. Defendant also acknowledged that she still was providing billing services for plaintiff's former client and his medical group, but she denied that she was in violation of the terms of her employment with plaintiff. Upon the conclusion of the evidentiary hearing, the trial court found that defendant signed, and was bound by, both the employee handbook and the employment agreement. Additionally, the trial court found that the terms of those documents likely restricted defendant's actions and, therefore, plaintiff was entitled to an interim injunction.

On October 7, 2013, the trial court held a hearing on defendant's objections to a proposed order submitted by plaintiff pertaining to the interim injunction. In particular, defendant challenged the noncompetition provisions, arguing that they were unreasonable and unenforceable under the Michigan Antitrust Reform Act ("MARA"), MCL 445.771 *et seq*. Defendant asked the court to determine the reasonableness of the ban in the employee handbook against soliciting plaintiff's past and present clients. The trial court declined to rule on the merits of that objection, noting its finding that defendant had signed the handbook herself, and enforced the ban without any limitations on duration or geographical scope. Additionally, the trial court entered an order granting plaintiff interim injunctive relief that prohibited defendant from obtaining employment from any of plaintiff's current or former clients, and from engaging in any conduct within a 50-mile radius of plaintiff's place of business that was competitive with a service provided by plaintiff.

The trial court later issued a judgment and permanent injunction, ordering defendant to pay damages and enjoining defendant from (1) "engaging in any conduct . . . competitive with a service provided by Plaintiff . . . within 50 miles of Plaintiff's principal place of business . . . for a period of one year" from the entry of the September 10, 2013 interim order; and (2) "from obtaining employment, either directly or indirectly, from any current or previously contracted client of [plaintiff]," regardless of geographic distance or duration.

## II. REASONABLENESS OF THE NONCOMPETITION PROVISION IN THE EMPLOYEE MANUAL

On appeal, defendant does not challenge the trial court's finding that she signed and agreed to be bound by both the employee manual and the employment agreement. Accordingly, defendant does not dispute that she may be prohibited from engaging in work that is competitive with any service provided by plaintiff for a period of 12 months within 50 miles of plaintiff's Flint location. Rather, she argues that the trial court erred in enforcing the noncompetition provision in the employee handbook as written without first determining whether it was reasonable. Additionally, she contends that the employee handbook provision, which prohibited her from performing any work for any of plaintiff's past or current clients, is unreasonable to the extent that its duration and geographic reach is unlimited. We agree that the provision is unreasonable.

-3-

## A. STANDARD OF REVIEW

"The reasonableness of a noncompetition provision is a question of law when the relevant facts are undisputed." *Coates v Bastian Bros, Inc*, 276 Mich App 498, 506; 741 NW2d 539 (2007). As such, because the parties do not dispute the relevant facts in this appeal, we review *de novo*, as a question of law, the reasonableness of the employee handbook provision. *Id*. "We review a trial court's decision to grant injunctive relief for an abuse of discretion," which occurs when the trial court's "decision falls outside [the] range of principled outcomes." *Pontiac Fire Fighters Union Local 376 v City of Pontiac*, 482 Mich 1, 8; 753 NW2d 595 (2008). "A court by definition abuses its discretion when it makes an error of law." *In re Waters Drain Drainage Dist*, 296 Mich App 214, 220; 818 NW2d 478 (2012).

## B. ANALYSIS

"A court must assess the reasonableness of [a] noncompetition clause if a party has challenged its enforceability." *Coates*, 276 Mich App at 507-508. Here, defendant challenged the reasonableness of the noncompetition clauses in the trial court. Thus, the court erred in ruling that plaintiff was entitled to enforce the clauses as written, and abused its discretion in granting injunctive relief accordingly, without first assessing the reasonableness of the clauses. See *id*.; *In re Waters Drain Drainage Dist*, 296 Mich App at 220.

We must determine whether the clauses are reasonable and enforceable. Because the applicable statute and caselaw requires an inherently fact-specific inquiry, at issue is whether the noncompetition provisions protect plaintiff's "reasonable competitive business interests" in the context of plaintiff's specific business. The burden is on plaintiff, as the party seeking to enforce the agreement, to establish the validity of the noncompetition clause. *Coates*, 276 Mich App at 508.

In general, contracts are presumed to be legal, valid, and enforceable. *Id*. at 507. However, "noncompetition agreements are disfavored as restraints on commerce and are only enforceable to the extent they are reasonable." *Id*.; see also *id*. at 506 ("Agreements not to compete are permissible under Michigan law as long as they are reasonable."). The reasonableness requirement is embodied in MCL 445.774a(1), which provides:

> An employer may obtain from an employee an agreement or covenant which protects an employer's reasonable competitive business interests and expressly prohibits an employee from engaging in employment or a line of business after termination of employment if the agreement or covenant is reasonable as to its duration, geographical area, and the type of employment or line of business. To the extent any such agreement or covenant is found to be unreasonable in any respect, a court may limit the agreement to render it reasonable in light of the circumstances in which it was made and specifically enforce the agreement as limited.

MCL 445.774a(1) is the codification of Michigan common-law rules regarding the enforceability of noncompetition agreements. *St Clair Med, PC v Borgiel*, 270 Mich App 260, 265-266; 715 NW2d 914 (2006).

At common law, a covenant not to compete was enforceable if it met four standards . . . . First, the covenant must be for an honest and just purpose. Second, it must be established for the protection of the legitimate interest of the party in whose favor it is imposed. Third, it must be reasonable as between the parties to the contract. Finally, it must not be specially injurious to the public. [*Id*. at 266 (citations and block quote omitted).]

Accordingly, under Michigan law as it stands today,

[a] restrictive covenant must protect an employer's reasonable competitive business interests, but its protection in terms of duration, geographical scope, and the type of employment or line of business must be reasonable. Additionally, a restrictive covenant must be reasonable as between the parties, and it must not be specially injurious to the public.

Because the prohibition on all competition is in restraint of trade, an employer's business interest justifying a restrictive covenant must be greater than merely preventing competition. To be reasonable in relation to an employer's competitive business interest, a restrictive covenant must protect against the employee's gaining some unfair advantage in competition with the employer, but not prohibit the employee from using general knowledge or skill. [*Coates*, 276 Mich App at 506-507, quoting *St Clair Medical*, 270 Mich App at 266 (quotation marks and block quote omitted).]

More specifically, "an employee is entitled to the unrestricted use of general information acquired during the course of his employment or information generally known in the trade or readily ascertainable." *Whirlpool Corp v Burns*, 457 F Supp 2d 806, 812 (WD Mich, 2006) (quotation marks omitted), quoting *Follmer, Rudzewicz & Co, PC v Kosco*, 420 Mich 394, 402; 362 NW2d 676 (1984). However, "preventing the anticompetitive use of confidential information is a legitimate business interest." *Rooyakker & Sitz, PLLC v Plante & Moran, PLLC*, 276 Mich App 146, 158; 742 NW2d 409 (2007). "Confidential information, including information regarding customers, constitutes property of the employer." *Follmer*, 420 Mich at 402. Relatedly, an employee "who establishes [client] contacts and relationships as the result of the goodwill of his employer's [business] is in a position to unfairly appropriate that goodwill and thus unfairly compete with a former employer upon departure." *St Clair Med*, 270 Mich App at 268; see also *Frontier Corp v Telco Communications Group, Inc*, 965 F Supp 1200, 1208-1209 (SD Ind, 1997) (applying Michigan law). See also *Follmer*, 420 Mich at 406 ("An employee who possesses confidential information regarding a client is in a position to exploit that information for the purpose of obtaining the patronage of the client after leaving his employer's service.") Thus, reasonable competitive business interests include protecting "close contact with the employer's customers or customer lists, or cost factors and pricing." *Certified Restoration Dry Cleaning Network, LLC v Tenke Corp*, 511 F3d 535, 547 (CA 6, 2007) (quotation marks and citation omitted).

In light of these principles, plaintiff could place reasonable restrictions on defendant's use of plaintiff's client information and relationships. However, we agree with defendant that it is unreasonable to permanently prohibit her from pursuing employment opportunities, directly or

indirectly, from any current or previously contracted client of plaintiff. Cf. *Rooyakker*, 276 Mich App at 158 (recognizing that a clause that prohibited former employees from soliciting or providing services to the employer's clients for a two-year period, without any geographical limits, was reasonable). This restraint is much broader than reasonably necessary to protect the confidential information of plaintiff, see *Follmer*, 420 Mich at 402; *Rooyakker*, 276 Mich App at 158; *St Clair Med*, 270 Mich App at 268, or reasonably protect plaintiff's competitive business interests, see *Coates*, 276 Mich App at 506-507. Such a restriction functions not only as a restraint on defendant, but also on plaintiff's current and former clients, as it permanently deprives them of competitive choices and limits their freedom to select a service provider of their own choosing. See *Coates*, 276 Mich App at 507 ("[A] restrictive covenant must be reasonable as between the parties, and it must not be specially injurious to the public.").

Although plaintiff argues that the expansive restriction is necessary to protect its business interests, plaintiff does not have an unlimited right to restrict the business choices of its clients. See *id*. at 506-507. Additionally, a provision that prohibits a former employee from acquiring employment from a former or current client of plaintiff encompasses an ever-growing number of potential clients and could extend five years, ten years, fifteen years, or more beyond the contractual relationship between the former or current client and plaintiff. Such a clause is patently unreasonable. Therefore, to the extent that plaintiff's employee handbook permanently prohibits a former employee from obtaining employment from any current or previously contracted client of plaintiff, that restriction is an unreasonable restraint on trade and unenforceable as written.

If the terms of a noncompetition agreement are unreasonable, MCL 445.774a allows a court to modify the terms of the agreement to render it reasonable and enforceable in light of the circumstances in which it was made. "Courts, applying Michigan law, have routinely upheld non-compete agreements restricting the former employee from engaging in restricted activities for periods of six months to three years." *Kelly Services, Inc v Marzullo*, 591 F Supp 2d 924, 939 (ED Mich, 2008). Likewise, in *Rooyakker*, 276 Mich App at 157-158, this Court upheld as reasonable a two-year restriction on soliciting clients by accountants who left an accounting firm. Because plaintiff's employment agreement contains a comparable provision that precludes former employees from soliciting plaintiff's clients for a period of 12 months after leaving plaintiff's employment, we conclude that it is appropriate to modify the applicable provision here to incorporate a corresponding 12-month period during which defendant is prohibited from obtaining employment from any current or previously contracted client of plaintiff. A 12-month period is reasonable in duration, and plaintiff's adoption of a 12-month period in the employment agreement reflects a recognition that such a time period is appropriate in this context.

Accordingly, we hold that the trial court's judgment should be modified to limit the injunction against "obtaining employment, either directly or indirectly, from any current or previously contracted client of [plaintiff]" to a period of 12 months. With this limitation on the duration of the restriction, it is not necessary or appropriate to impose an additional geographical limitation. It is apparent that the provision was intended to prevent employees from utilizing client information acquired during their employment relationship with plaintiff in a way that unfairly disrupts and solicits plaintiff's business. That purpose exists regardless of the client's geographic location. Accordingly, we decline to impose any geographical limitation on the employee handbook clause, as enforced by the trial court's judgment and permanent injunction.

## III. CONCLUSION

The noncompetition clause in the employee handbook is unreasonable under the circumstances. Thus, we remand for modification of the trial court's judgment, as provided in this opinion, but affirm in all other respects. See MCR 7.216(A)(1), (7); *Coates*, 276 Mich App at 513.

Affirmed in part and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark J. Cavanagh
/s/ Michael J. Riordan
/s/ Michael F. Gadola